NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROBERT V. BAER, | : |
| Plaintiff, | : Civil Action No. 02-2334 (JAP) |
| v. | : |
|  | : **OPINION** |
| DAVID CHASE, DC ENTERPRISES, INC., a Delaware Corporation, and JOHN DOES A-Z, | : |
| Defendants. | : |

APPEARANCES:

Robert V. Baer, Esq.
Harley D. Breite, Esq.
Law Offices of Harley D. Breite
562 Black Oak Ridge Road
Wayne, NJ 07470
    *Attorneys for Plaintiff*

Peter L. Skolnik
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, NJ 07068
    *Attorney for Defendants*

PISANO, District Judge.

    Plaintiff Robert V. Baer ("Plaintiff" or "Baer") brought this action against Defendants David Chase ("Chase") and DC Enterprises, Inc. (together "Defendants") asserting a number of claims arising out of Baer's alleged involvement in the creation and development of the well-known television series, *The Sopranos*. After two orders from this Court granting summary judgment to Defendants and two appeals to the United States Court of Appeals for the Third

Circuit, all that remains from Baer's Complaint is a single quasi-contract claim. Currently before the Court is Defendants' Motion to Limit Damages Recoverable in Quasi-Contract in which Defendants argue that Baer should be (1) precluded from recovering in quasi-contract for any ideas he claims he provided to Chase; (2) barred from seeking discovery, including expert discovery, concerning the value of any idea he alleges he provided to Chase; and (3) prohibited from offering evidence, including expert opinions, reports and testimony, regarding the value of those ideas. For the reasons expressed below, the Court grants Defendants' motion.

## I. BACKGROUND

### A. *Facts*

Proving to be every bit as resilient as Tony Soprano, the fictional mob boss and central figure of *The Sopranos*, this action returns to the Court for a third time. In two prior opinions, this Court has set forth a comprehensive summary of the facts of this case. *See Baer v. Chase*, No. 02-2334, 2005 WL 1106487, at *1-3 (D.N.J. Apr. 29, 2005); *Baer v. Chase*, No. 02-2334, 2004 WL 350050, at *2-4 (D.N.J. Feb. 20, 2004); *see also Baer v. Chase*, 392 F.3d 609, 612-15 (3d Cir. 2004). In the interest of brevity, the Court will discuss only those facts that are relevant to Defendants' motion.

Baer, a former prosecutor in the Union County Prosecutor's Office in Elizabeth, New Jersey, and Chase, a writer, director, producer and creator of television programs, met in June 1995, around the time Chase was developing an idea for a television series about a mob boss in therapy. During their initial meeting, Baer told Chase some New Jersey crime stories, all of which were factual and true. Baer, apparently unaware of the fact that Chase had previously worked on projects involving northern New Jersey mobsters, suggested that Chase shoot movies

or television shows about crime in New Jersey and the northern New Jersey mob. Also, according to Baer, he mentioned some facts and locations concerning organized crime in New Jersey, but provided no "detail or drama."

In July 1995, as Chase began to devote more attention to the "mob boss in therapy idea," he contacted Baer to see if he would be willing to help Chase compile information about the inner workings of the mob. To obtain some of the desired information, Baer reached out to Detective Lieutenant Robert Jones ("Jones"), an organized crime expert in the Union County Prosecutor's Office. After speaking with Jones, Baer sent Chase some notes discussing mob involvement in gambling and in the garbage business, and Morris Levy, the Jewish mobster and record producer who had been jailed for defrauding MCA Records. In August 1995, Chase pitched the idea for a show about a mob boss in therapy to Fox Broadcasting ("Fox") and, in early September, Fox agreed to finance the creation of a pilot story.

In October, Chase visited New Jersey for three days to conduct research for the show. During his visit, Chase spent many hours with Baer, who arranged for Chase to meet with individuals whom Baer thought could provide useful information about organized crime. Specifically, Chase and Baer met with Jones, Detective Thomas Koczur ("Koczur"), an Elizabeth homicide detective and close friend to Baer, and Antonio Spirito ("Spirito"), a waiter at an Italian restaurant, whom Koczur knew to be a good storyteller.[1] Baer and Koczur, who served as tour guide, drove Chase to several locations in northern New Jersey, including local landmarks,

---

[1] Koczur, Jones, and Spirito have never sought compensation from Chase, nor have they asserted any claims against him.

3

known mob hangouts, and locations of mob significance in Elizabeth and Newark.[2] Additionally, Koczur arranged for the group to have lunch with Spirito, who shared some true and sometimes personal crime stories.[3] Finally, Chase met with Jones who provided him with access to wiretaps that were used in local criminal trials and information about organized crime, including facts about Morris Levy[4] and the mob's infiltration of MCA Records. As Baer has acknowledged, virtually all of the information provided to Chase during his visit exists in the public record.

At the end of October 1995, Chase returned to Los Angeles and completed a draft pilot of *The Sopranos*, which he delivered to Fox in early December 1995. After completing the pilot script, Chase sent a copy to Baer. Fourteen months later, Baer sent Chase his written comments on the script, but had no further involvement with Chase or *The Sopranos*. Though the issue of compensation came up on a few occasions, Chase never paid Baer for his services and the two never entered into a contract of any kind. Chase, recognized as creator, writer, director and producer of the series, continued working on *The Sopranos*, which first aired on HBO in 1999. *The Sopranos*, now in its final season, has enjoyed widespread critical and financial success.

---

[2] Some of the locations that Koczur, Baer, and Chase visited appear in the opening credits of *The Sopranos*; others have appeared in episodes of the show.

[3] According to Spirito's deposition testimony, he told Chase "just a few stories . . . [o]dds and ends" and everything he told Chase was "absolutely" true and factual. (Spirito Tr. 48, 49, 54). Notably, Spirito mentioned two cat-burglar mob brothers known as "Little Pussy" and "Big Pussy" Russo. (Spirito Tr. 17-18). Chase used the name "Big Pussy" for one of the original characters on *The Sopranos*.

[4] Baer contends that Morris Levy, an actual person whose criminal exploits are a matter of public record, is the inspiration for Hesh Rabkin, a character on *The Sopranos*.

### B. *Procedural History*

Baer's Complaint, which he filed on May 15, 2002, and later amended on May 2, 2003, asserts claims against Defendants for: (1) breach of contract; (2) breach of implied contract; (3) breach of quasi-contract; (4) common law fraud; (5) equitable fraud; (6) negligent misrepresentation; (7) breach of fiduciary duty; (8) unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125; (9) unfair competition and misappropriation under N.J.S.A. 56:4-1; and (10) tortious interference with prospective economic advantage.

On February 20, 2004, this Court granted summary judgment to Defendants and dismissed Baer's Complaint in its entirety. Notably, the Court found as a matter of law that the ideas that Baer allegedly conveyed to Chase were not novel because the so-called ideas consisted of facts and locations that exist in the public domain. *Baer*, 2004 WL 350050, at *13. Further, the stories told to Chase during his three-day visit to New Jersey were not Baer's stories, nor did he tell them. *Id.* The stories, told by Koczur, Jones and Spirito, were thus not original to Baer. *Id.* As such, the Court concluded (and Baer conceded the point) that the "locations, stories and information" discussed during Chase's October 1995 visit "either existed in the public domain or came from one of [Baer]'s associates." *Id.*; *see also Baer*, 392 F.3d at 629 (noting that "many of the stories and potential plot lines that Baer 'provided' Chase existed in the public record" and "the additional ideas and stories . . . were not his stories; 'associates' of Baer actually told them to Chase").

On appeal, the Third Circuit reversed this Court's dismissal of Baer's quasi-contract claim, but affirmed dismissal of the other nine claims in Baer's Complaint. Discussing Baer's ideas in the context of his claim for misappropriation, the Third Circuit found that "[i]t is clear

5

that virtually all of Baer's alleged contributions either existed in the public domain or concerned stories and facts that he did not provide." *Baer*, 392 F.3d at 629.  In response to Baer's claim that he selected which stories his associates would tell and that this unique combination of stories made them original despite their existence in the public domain, the Circuit Court stated that "[a]ggregation of ideas and expression do not by themselves create novelty." *Id.*  On remand, this Court granted summary judgment in favor of Defendants on the quasi-contract claim on the basis that the statute of limitations barred the claim. *Baer*, 2005 WL 1106487, at *9.  The Third Circuit, however, reversed that finding and the parties are back before this Court to litigate Baer's quasi-contract claim, the only surviving claim in Plaintiff's Complaint.

  Relying on the earlier opinions of this Court and the Third Circuit, Defendants contend that it is law of the case that Baer did not convey any original ideas to Chase.  Further, Defendants argue, any information that Chase did receive during his three-day visit to northern New Jersey came from people other than Baer and/or was a matter of public record.  Based on these arguments and their contention that New Jersey law does not permit recovery in quasi-contract for the use of non-novel ideas, Defendants request that the Court enter an order (1) precluding Baer from recovering in quasi-contract for any ideas he claims he provided to Chase, either directly, or indirectly through Koczur, Jones, Spirito, or any other person; (2) barring Baer from seeking damages discovery, including expert discovery, concerning the value of any idea he alleges he provided to Defendants, either directly, or indirectly through Koczur, Jones, Spirito, or any other person; and (3) prohibiting Baer from offering expert opinions, reports, or testimony regarding the value of those ideas.

  Baer takes the position that none of the earlier opinions preclude him from recovering in

quasi-contract for his ideas because his sharing of those ideas, though not novel, conferred a benefit upon Chase.  Baer also argues that he is entitled to recover for the ideas he allegedly conveyed to Chase because, even if the ideas were not novel in an absolute sense, the ideas were novel to Chase.  Lastly, Plaintiff contends that his unique combination and aggregation of public domain facts resulted in ideas that were, in fact, novel.

**II. DISCUSSION**

### *A. Baer May Not Recover in Quasi-Contract for Ideas He Allegedly Conveyed to Chase*

A quasi-contract, which is not a contract at all, is based upon an equitable principle through which courts "prevent unjust enrichment or unconscionable benefit or advantage." *Duffy v. Charles Schwab & Co.*, 123 F. Supp. 2d 802, 814 (D.N.J. 2000) (quotation omitted); *see also St. Paul Fire and Marine Ins. Co. v. Indem. Ins. Co. of N. Am.*, 32 N.J. 17, 158 A.2d 825, 827 (1960) ("[Quasi-contracts] rest on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another . . . .").  The quasi-contract theory permits a plaintiff to recover damages "even though the parties' words and actions are insufficient to manifest an intention" to enter into a contract.  *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 608 A.2d 280, 285 (1992); *see also Callano v Oakwood Homes Corp.*, 91 N.J. Super. 105, 219 A.2d 332, 334 (1966) ("In cases based on quasi-contract liability, the intention of the parties is entirely disregarded.").  As such, quasi-contract and contract, whether express or implied, are mutually exclusive theories of recovery.  *Duffy*, 123 F. Supp. 2d at 814.

Under New Jersey law, to recover in quasi-contract for the use of an idea, the plaintiff must demonstrate that the idea for which he seeks compensation was novel.  *Id.* at 815 (denying

plaintiff's quasi-contract claim for non-novel idea); *Bergin v. Century 21 Real Estate Corp.*, No. 98-8075, 2000 WL 223833, at *9 (S.D.N.Y. Feb. 25, 2000) (stating that novelty is required for quasi-contract claim for misappropriation of an idea under New Jersey law). Indeed, it is not "unjust" to use a non-novel idea without compensating the one who supplied the idea. *Duffy*, 123 F. Supp. 2d at 815; *see also Blackmon v. Iverson*, 324 F. Supp. 2d 602, 613 (E.D. Pa. 2003) ("In the absence of novelty and concreteness, the plaintiff cannot show that he enriched the defendant; the defendant has only received an idea that he was already free to use."). In earlier opinions, both this Court and the Third Circuit concluded that Baer did not communicate any novel ideas to Chase. As the Third Circuit stated, "[i]t is clear that virtually all of Baer's alleged contributions either existed in the public domain or concerned stories and facts that he did not provide." *Baer*, 392 F.3d at 629. Further, the Third Circuit concluded that, under New Jersey law, "ideas lose their novelty if they are in the domain of public knowledge before use." *Id.*[5] Thus, it is law of the case that the ideas Baer conveyed to Chase were either not novel or not Baer's ideas—indeed, the so-called ideas were stories told by Koczur, Jones and Spirito, and facts and information that existed in the public domain.[6] As a result, Baer cannot recover in quasi-contract for Chase's use of those ideas. *See Duffy*, 123 F. Supp. 2d at 815; *Bergin*, 2000 WL 223833, at *9.

---

[5] Although the Third Circuit reached that conclusion in the context of analyzing Baer's misappropriation claim, the Court's test for what constitutes a novel idea is not limited to the misappropriation context. As such, the Third Circuit's finding that an idea is not novel if it exists in the public domain applies with equal force in the context of a quasi-contract claim.

[6] "The law of the case doctrine limits relitigation of an issue once it has been decided in an earlier stage of the same litigation." *Hamilton v. Leavy*, 322 F.3d 776, 786 (3d Cir. 2003) (quotation omitted). Courts apply the doctrine "with the intent that it will promote finality, consistency, and judicial economy." *Id.* at 787.

Rather than accept the foregoing conclusions from the Third Circuit, Baer relies on a case from the Alaska Supreme Court, *Reeves v. Alyeska Services Co.*, 926 P.2d 1130, 1144 (Alaska 1996), for the proposition that the sharing of a non-novel idea can give rise to a quasi-contract claim. In addition to the fact that a case from the Alaska Supreme Court is not binding upon this Court, *Reeves* involves an application of Alaska law, which is simply not relevant to the issue presented here: whether Baer may recover, *under New Jersey law*, for Chase's use of non-novel ideas. As explained above, Courts interpreting New Jersey law on quasi-contract have concluded that novelty is required for a quasi-contract claim involving the use of ideas. *Duffy*, 123 F. Supp. 2d at 815; *Bergin*, 2000 WL 223833, at *9. Moreover, the *Reeves* Court, much like courts applying New Jersey law, stated that novelty and originality "distinguish protectable ideas from ordinary ideas that are freely available for others to use" and the use of a non-novel idea "cannot satisfy the requirements of a quasi-contract claim." *Reeves*, 926 P.2d at 1143. Thus, Baer's reliance on *Reeves* is unavailing.

Next, Baer argues that his ideas are compensable in quasi-contract because the ideas, though not novel in an absolute sense, were novel to Chase. New Jersey law, however, does not recognize the "novelty to the buyer" theory for idea submission claims that are not contract-based. In *Johnson v. Benjamin Moore & Co.*, 347 N.J. Super. 71, 788 A.2d 906, 919 (App. Div. 2002), the New Jersey Appellate Division adopted the standard announced in *Nadel v. Play-by-Play Toys & Novelties, Inc.*, 208 F.3d 368 (2d Cir. 2000). The *Nadel*, or New York, standard distinguishes between idea submission claims that are property-based, which "can only arise from the taking of an idea that is original or novel in absolute terms," and claims that are contract-based, which must only satisfy a "novelty to the buyer" standard. *Id.* at 378. Under the

9

*Nadel* standard, Baer's quasi-contract claim, which by its very nature is not based in contract, *see Wanaque Borough Sewerage Auth. v. Twp of W. Milford*, 144 N.J. 564, 677 A.2d 747, 752 (1996), fails because, as he has conceded, he cannot make a showing of absolute novelty.

Nor can Baer recover under a theory that he shaped, developed and combined ideas that were not his or existed in the public domain. "An idea will not satisfy [the novelty] requirement if it is not significantly different from, or is an obvious adaptation or combination of ideas in the public domain." *Duffy*, 123 F. Supp. 2d at 810. Further, as the Third Circuit stated in response to Baer's argument that he is entitled to recovery for shaping and adapting ideas that existed in the public record or were based on real-life stories, "[a]ggregation of ideas and expression do not by themselves create novelty." *Baer*, 392 F.3d at 629. Relying on *Duffy*, the Third Circuit added that the presentation or adaptation of ideas goes "more to an idea's expression than to the idea itself" and the expression of an idea is not entitled to protection. *Id.* Thus, even if Baer had shaped or developed facts and ideas that existed in the public domain, that would not entitle him to any recovery in this case.

It is clear from Baer's Complaint, the evidence in the record and the previous decisions in this case that, although he did perform some services for Chase, Baer did not assist in the creation or development of *The Sopranos*. Instead, during the summer and fall of 1995, when Chase was developing the idea for the television series and working on the pilot story, Baer filled roles that could fairly be characterized as location scout, researcher, and consultant. Indeed, it is undisputed that Baer showed Chase various locations in northern New Jersey, introduced Chase to individuals who shared facts and stories with him, answered questions that Chase posed about

10

organized crime, conducted research, and offered comments on the first script of *The Sopranos*.[7] It is further undisputed that those services are compensable in quasi-contract and that Baer is entitled to engage in discovery and present evidence, including expert discovery and evidence, regarding the value of those services. It is law of the case, however, that the *ideas* for which Baer seeks compensation are not novel, exist in the public domain, and concern facts he did not provide. It is the law of New Jersey, moreover, that he may not recover in quasi-contract for such ideas—or for the service of conveying, developing, or shaping the ideas. Therefore, the Court holds that Baer is precluded from (1) recovering in quasi-contract both for the service of providing ideas to Chase and for the ideas themselves; (2) seeking discovery, including expert discovery, concerning the value of any idea he alleges he provided to Chase; and (3) offering evidence, including expert opinions, reports and testimony, regarding the value of those ideas.

### B. Baer Is Entitled to the Reasonable Value of His Services

Under New Jersey law, "quasi-contractual recovery for services rendered when a party confers a benefit with a reasonable expectation of payment . . . is known as quantum meruit [which] entitles the performing party to recoup the reasonable value of services rendered." *Weichert Co. Realtors*, 608 A.2d at 285 (citations omitted). "The New Jersey Supreme Court has not definitively articulated the competent methods of establishing damages in a quantum meruit

---

[7] In his Complaint, Baer alleges that he performed the following services: (1) answering questions, conducting research, and providing information "concerning crime, criminal syndicates, and the law"; (2) arranging meetings with Jones, Spirito and Koczur, all of whom possessed "knowledge on the subjects pertinent to the project" for "purposes of educating Chase"; (3) exploring "the world of organized crime, . . . educating Chase and discussing the project; (4) introducing Chase to a number of locations, such as the City of Elizabeth, the Pulaski Skyway, and Centanni's Meat Market; and (5) commenting on Chase's script. (Compl. ¶¶ 7-8, 11-12, 13, 14, 17).

action." *See West v. IDT Corp.*, No. 01-4372, 2006 WL 1459971, at *3 (D.N.J. May 25, 2006). Nonetheless, the New Jersey Supreme Court has recognized the following two methods as appropriate for calculating damages in a quantum meruit action: (1) the market value method, in which damages are calculated according to industry custom or practice for similar services, *see Weichert Co. Realtors*, 608 A.2d at 287; and (2) the cost method, in which damages are limited to the costs a plaintiff incurs in providing the service, *see Hudson City Contracting Co. v. Jersey City Incinerator Auth.*, 17 N.J. 297, 111 A.2d 385, 391 (1955). *See West*, 2006 WL 1459971, at *3. The prevailing view among courts is that the market value method is the proper measure for damages "in quantum meruit cases where the defendant requests services from the plaintiff." *Id.* (citing Candace S. Kovacic, *A Proposal to Simplify Quantum Meruit Litigation*, 35 AM. U. L. REV. 547, 551 (1986)).[8]

In the instant case, Baer's quantum meruit claims arise from Chase's requests for services, namely that Baer conduct research on organized crime, introduce Chase to individuals with knowledge of the northern New Jersey Mafia, and generally help Chase gather information about the mob. This, in other words, is a quantum meruit case in which the defendant requested services from the plaintiff. Based on the reasoning set forth in the *West* decision and in Professor Kovacic's article, the Court finds that the proper measure of damages in this case is the market value method.

---

[8] According to Professor Kovacic, "the reasonable market value of plaintiff's services can be viewed as the correct remedy in most quantum meruit cases . . . because reasonable value can be viewed as the defendant's gain in certain situations. The value of plaintiff's services measures the defendant's gain when the defendant requests the work: the defendant's benefit is receiving what he or she requested; those requested services have a market value." Kovacic, 35 AM. U.L. REV. at 557.

Although Defendants' motion does not request the Court to preclude Baer from engaging in discovery and presenting evidence regarding the compensation Chase has received as a result of his work on *The Sopranos* and the financial success of the series generally, the parties devote significant portions of their briefs to the issue of whether that type of evidence is admissible to prove the reasonable value of Baer's services.  The Court is skeptical of Plaintiff's contention that such evidence is probative of the reasonable market value of Baer's services.  Indeed, it would seem that the only relevant and competent evidence regarding the value of Baer's services is that which tends to show what others in the entertainment industry would pay Baer (or someone else) for those or similar services.  It would also seem that, as evidence of the value of Baer's services, the compensation Chase received and the profits that the series generated is the very type of "woefully inadequate and speculative" damages evidence that New Jersey law abhors.  *Id.* at *3; *Mosley v. Femina Fashions, Inc.*, 356 N.J. Super. 118, 811 A.2d 910, 916 (App. Div. 2002) ("[New Jersey] law abhors damages based on mere speculation."). Nonetheless, because there is no record before the Court regarding the industry standard for compensation for the type of services Baer provided, the Court finds that the admissibility of evidence relating to Chase's compensation and the financial success of *The Sopranos* is a question best left for another day.

13

**III.  CONCLUSION**

For the reasons expressed above, the Court grants Defendants' Motion to Limit Damages Recoverable in Quasi-Contract.  An appropriate order accompanies this opinion.

/s/ Joel A. Pisano  
JOEL A. PISANO, U.S.D.J.

Dated: April 27, 2007